IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AKERSON ENTERPRISES, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>PUSHEN TESTING INSTRUMENTS (SHANGHAI) CO., LTD., and WWW.KINDREDBRAVLY.SHOP,<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>Case No. 2:25-cv-00150-JNP<br><br>Chief District Judge Jill N. Parrish |

Before the court is plaintiff Akerson Enterprises, LLC's motion for a default judgment and permanent injunction against Defendants Pushen Testing Instruments (Shanghai) Co., Ltd. and www.kindredbravly.shop. ECF No. 24. Akerson Enterprises seeks a default judgment, statutory damages under the Lanham Act, a permanent injunction against further acts of trademark infringement by the Defendants, and attorney's fees and costs. The court **GRANTS** Akerson Enterprises' motion.

## BACKGROUND

In evaluating a motion for default judgment, the court accepts all of the well-pled factual allegations of the complaint as true. *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 157 (10th Cir. 2022). Akerson Enterprises' Complaint establishes the following facts. ECF No. 1.

Kindred Bravely, founded in 2015, is a women's apparel company that specializes in clothing for pregnant and nursing mothers. Its founder, Deeanne Akerson, is on a mission to

provide maternity and nursing clothes that are not only functional but also stylish. Her own experiences as an expecting and later nursing mother inspired her to create clothing that would make new mothers feel both comfortable and confident. She put her marketing background to use, and Kindred Bravely's first line of products quickly gained popularity. Today, the company is known for its high-quality products and commitment to social responsibility. It distributes its products throughout Utah and the United States.

Kindred Bravely obtained federal trademark registration for the "Kindred Bravely" mark in 2018 for maternity clothing and nursing apparel. A federal trademark registration for its "Sublime" mark for maternity bras and nursing bras followed in 2020. These trademarks are fundamental to Kindred Bravely's corporate identity. Customers associate these marks with the company's high-quality products and goodwill. The company has also invested millions of dollars in advertising and promoting the marks, logos, and the products sold under those brands.

In late February 2025, Kindred Bravely began receiving reports from its customers of a counterfeit website located at www.kindredbravly.shop featuring the Kindred Bravely and Sublime trademarks and displaying unauthorized photographs of numerous Kindred Bravely products. The counterfeit website is a close copy of the real Kindred Bravely website. Defendants operate the site and sell counterfeit products to unsuspecting consumers who think they are purchasing genuine Kindred Bravely goods. Utah is among the states where Defendants offer to sell and ship their counterfeit products, and PayPal, a U.S. payment processor, facilitates payments on the counterfeit website. Kindred Bravely filed this instant lawsuit to enjoin Defendants from selling counterfeit goods and unlawfully profiting from its registered trademarks.

## ANALYSIS

**I.  Default Judgment**

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment against a party who "has failed to plead or otherwise defend" against claims for affirmative relief. First, the clerk of court "must enter the party's default" under Rule 55(a). The clerk of the court did so on May 8, 2025. ECF No. 23.

Second, the non-defaulting party must move the court (or, in certain circumstances, the clerk) for entry of default judgment under Rule 55(b). "[E]ntry of a default judgment is committed to the sound discretion of the district court . . . ." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In order to enter default judgment, the court must first assure itself of both subject matter jurisdiction and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). It must then determine whether the plaintiff's complaint contains sufficient facts, accepted as true, to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). The court may consider declarations and other exhibits when evaluating a plaintiff's claims. *See, e.g.*, *Major Bob Music v. S. Shore Sports Bar & Grill, Inc.*, No. 2:08-cv-689, 2010 WL 2653330, at *1 (D. Utah June 30, 2010).

Ultimately, the court finds that it has jurisdiction and that Plaintiff's pleadings contain sufficient factual bases for entry of a default judgment.

**A.  Subject Matter Jurisdiction**

Akerson Enterprises' sole cause of action for trademark infringement and counterfeiting arises under federal law—specifically the Lanham Act, 15 U.S.C. § 1114. ECF No. 1 at ¶¶ 32–38. Accordingly, the court has subject matter jurisdiction over this claim under 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1121 (actions arising under the Lanham Act).

3

### B. Personal Jurisdiction

The Fourteenth Amendment's Due Process Clause limits a court's ability to exercise jurisdiction over a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's relationship with the forum state. *See Bristol-Meyers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 261–262 (2017). Since Defendants are alleged to be a Chinese company and its affiliated persons or entities, "only specific jurisdiction is at issue" here. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). The "constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts, in turn, means that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum [s]tate, and (2) the plaintiff's injuries 'arise out of or relate to those activities.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 472).

Kindred Bravely alleges in its complaint that Defendants offer counterfeit products for sale across the United States, including in Utah. The specific inclusion of Utah in a dropdown list as a location to which their products may be sold and shipped "is sufficient to establish specific personal jurisdiction" because it indicates that Defendants purposely directed their activities at Utah residents and that Kindred Bravely's harm arises out of those contacts with Utahns. *See Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 9601834, at *1 (D. Utah May 5, 2020); *see also DP Creations, LLC v. Reborn Baby Mart*, No. 2:21-cv-00574, 2021 WL 11585915, at *2 (D. Utah Nov. 22, 2021) (determining the exercise of personal jurisdiction to be proper in a trademark-infringement case where the defendant's website included Utah in the dropdown list on

4

its checkout page). Accordingly, the court's exercise of personal jurisdiction over Defendants satisfies due process.

### C.    The Substantive Claim

Akerson Enterprises argues that it is entitled to a default judgment on its Lanham Act trademark infringement claim. "To prevail under Section 43(a) [of the Lanham Act], a plaintiff must show '(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse customers.'" *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052 (10th Cir. 2021) (citation omitted). Akerson Enterprises easily establishes all three factors.

First, under the Lanham Act, there is a statutory presumption of protectability when the mark is registered. *See* 15 U.S.C. § 1115(a) ("Any registration issued . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark."). Akerson Enterprises provides evidence of its federal registration for "Kindred Bravely" effective July 3, 2018, and for "Sublime" effective September 1, 2020. *See* ECF Nos. 1-1, 1-2.

Second, Defendants use the trademark in marketing and selling their counterfeit products on the internet. *See ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-cv-207, 2012 WL 3962737, at *3 (D. Utah Sept. 11, 2012) (holding that the plaintiffs satisfied the commercial use requirement where "Defendants have marketed and sold smart phone software applications under the [infringing] marks"). The counterfeit website prominently features both trademarks hundreds of times, including even the associated registered trademark symbol ("®").

Finally, Defendants' use of the trademarks is likely to be confusing or deceptive to consumers. In the Tenth Circuit, courts use six non-exhaustive factors to evaluate the likelihood of confusion:

> (1) evidence of actual confusion; (2) the strength of the contesting mark; (3) the degree of similarity between the competing marks; (4) the intent of the alleged infringer in adopting the contested mark; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the similarity of the parties' products and the manner in which they market them.

*Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). Which factors are most important depends on the facts of a specific case and the strength of the other factors. *Id.* The balance of the factors here heavily favors Kindred Bravely.

To begin, Kindred Bravely alleges that it learned of Defendants' counterfeit website because potential customers were confused about whether it was affiliated with the real Kindred Bravely and reached out for clarification. This confusion is understandable as Defendants' marks are identical to Kindred Bravely's. Such "[e]vidence of actual confusion . . . is the best evidence of a likelihood of confusion in the marketplace." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1055 (10th Cir. 2008) (internal quotation marks omitted).

The evidence of actual confusion is complemented by the conceptual and commercial strength of the Kindred Bravely mark—that is, its "capacity to indicate the source of the goods or services with which it is used." *Water Pik*, 726 F.3d at 1151; *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 975 (10th Cir. 2002) ("The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."). The Kindred Bravely mark is conceptually strong because it "use[s] common words . . . that do not suggest or describe any quality or characteristic of the goods or services" and is therefore distinctive. *Sally Beauty*, 304 F.3d at 976. The Kindred Bravely mark is also commercially strong: it has been listed as one of the best maternity brands on *InStyle*'s website, and its products are sold on its own website and through popular retailers like Target. *See* Katherine J. Igoe & Claudia Willen, *The 20 Best Maternity Brands to Wear During Pregnancy and Beyond*, INSTYLE (Feb. 13, 2025),

https://www.instyle.com/best-maternity-brands-8385043. The company has also invested millions of dollars in advertising and promoting its trademarks.

As to intent, the record clearly demonstrates that Defendants copied Kindred Bravely's trademarks and website to impersonate the company, confuse customers, and sell counterfeit goods. "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion." *Sally Beauty*, 304 F.3d at 973.

Although not necessary to consider given the force of the preceding factors, the final two factors in the likelihood-of-confusion analysis also favor Kindred Bravely. Since the company's items are relatively inexpensive articles of clothing, consumers are unlikely to exercise significant care in making their purchases, making it more likely that Kindred Bravely's products would be confused with Defendants' counterfeit ones. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983) ("Buyers typically exercise little care in the selection of inexpensive items . . . [So, t]hese items are more likely to be confused than expensive items . . . ."). And finally, the product images on Defendants' website and marketing materials are lifted directly from Kindred Bravely's, nearly ensuring that customers would get confused between the counterfeit and authentic products. For these reasons, the likelihood of confusion is almost certain.

Defendants have, consequently, violated the Lanham Act, and a default judgment is warranted. However, the court must still determine the amount of damages to be awarded. *See Stampin' Up!, Inc. v. Hurst*, No. 2:16-CV-00886, 2018 WL 2018066, at *6 (D. Utah May 1, 2018)

### D.     Damages

Akerson Enterprises seeks an award of $4,000,000 in statutory damages for Defendants' trademark infringement. Under the Lanham Act, a "plaintiff may elect . . . to recover, instead of actual damages and profits under subsection (a), an award of statutory damages." 15 U.S.C. §

1117(c). "Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain." *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999). If a court finds that a defendant's infringement upon a trademark was "willful," the trademark owner may recover statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Statutory damages are well-suited to the instant case. It is impossible to calculate Akerson Enterprises' actual damages due to the fact that Defendants have not appeared in court and Akerson Enterprises was unable to obtain records from the associated Paypal accounts showing substantial counterfeiting-related revenues. ECF No. 24 at 14.

The court must therefore answer three questions in order to determine the proper statutory damages award in this case. First, were Defendants' infringements on Akerson Enterprises' trademarks willful? Second, how many counterfeit marks per type of goods sold did Defendants use? And third, how much should the court award Akerson Enterprises for each counterfeit mark? Each question is answered in turn.

First, Defendants' infringements on Akerson Enterprises' trademarks were clearly willful. Defendants used the trademarks, with the registered trademark symbol, throughout the near-identical website. Defendants also used photographs copied from the actual Kindred Bravely website to advertise the counterfeit products.

Second, for purposes of calculating statutory damages, Defendants used two counterfeit marks: Kindred Bravely and Sublime.

Third, the court awards $200,000 for each of the two counterfeit marks specified above. "In the absence of clear guidelines for setting a statutory damage award, courts have tended to use

8

their wide discretion to compensate plaintiffs, as well as to deter and punish defendants . . . ." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002), *amended* (June 28, 2002). Factors often considered in an award of statutory damages include:

> (1) the [defendant's] expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [mark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Klein-Becker USA, LLC v. Englert*, No. 2:06-CV-378, 2011 WL 147893, at *14 (D. Utah Jan. 18, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013).

The first factor, expenses saved and profits reaped, weighs in favor of a moderate award for Akerson Enterprises. As is the case in many trademark infringement cases, Defendants have co-opted a trademark owner's significant investment in building a brand in order to sell a product. Here, Akerson Enterprises claims to have spent millions on advertising and promoting its brand. These are marketing expenses that Defendants did not pay but unfairly used to their own benefit. However, the court has no reliable evidence on what profits were reaped.

The second factor, revenues lost by the plaintiff, is neutral. Akerson Enterprises does not have an estimate of the amount of revenues it has lost, in part because Defendants have been unresponsive throughout the case.

The remaining five factors weigh in favor of a significant award. As detailed above, Akerson Enterprises has spent significantly on its brand, which is now sold throughout the country and in popular retailers like Target. With respect to the third factor, its trademarks undoubtedly have significant value. Fourth, significant penalties are needed to dissuade similar actors from deploying internet counterfeiting scams for quick and easy gains. Fifth, as previously discussed,

the court finds that the Defendants' brazen use was willful. Sixth, this motion was filed after entry of a certificate of default, and Defendants have not once communicated with the court. And seventh, a significant award is warranted to compel Defendants to cease their lawbreaking.

Ultimately, while many of the factors support a significant award, the court does not find the maximum award justified given the limited evidence of profits reaped by Defendants and profits lost by Plaintiff. But considering the egregious nature of Defendants' infringement, the need for deterrence, and Defendant's non-cooperation, Akerson Enterprises is nevertheless entitled to a significant award of statutory damages. Therefore, the court finds Defendants liable for $200,000 in statutory damages for each of the two counterfeit marks at issue in this case. While there is of course variation in how courts exercise their discretion in awarding damages, this amount is in line with prior cases. *See, e.g.*, *Tapestry, Inc. v. Hannstar Trading Co.*, No. 23-CV-01049-NYW-KAS, 2023 WL 8600714, at *7 (D. Colo. Dec. 12, 2023) ($200,000 award granted per mark); *Acushnet Co. v. McMurdie*, No. 4:23-CV-00025, 2025 WL 754032, at *7 (D. Utah Mar. 10, 2025) ($250,000 per mark when extent of counterfeiting scheme was unknown). This entitles Akerson Enterprises to a total award of $400,000.

## II. Permanent Injunction

Akerson Enterprises also seeks a permanent injunction against Defendants. The Lanham Act authorizes courts to grant injunctive relief to prevent further violations of a trademark holder's rights. 15 U.S.C. § 1116(a). Accordingly, the court looks to the well-established standard for granting injunctive relief to determine whether an injunction is justified in this case. "For a party to obtain a permanent injunction, it must prove: '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect

the public interest.'" *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (citation omitted).

As noted above, Akerson Enterprises has succeeded on the merits of its trademark infringement claim. Additionally, Akerson Enterprises is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of the Lanham Act. 15 U.S.C. § 1116(a). Because it has not been rebutted, the presumption of irreparable harm stands. Moreover, the threatened injury caused by Defendants' continued use of the trademarks outweighs any harm that an injunction may cause to the defendants. After all, the injunction would only require Defendants to cease their illegal activities. *See Core Progression Franchise LLC v. O'Hare*, No. 21-1151, 2022 WL 1741836, at *4 (10th Cir. May 31, 2022) (unpublished) ("Harms that a party brings on himself generally bear less weight in this balancing analysis."). Finally, a permanent injunction will not adversely affect the public interest. To the contrary, an injunction will benefit the public by helping to avoid consumer confusion. Accordingly, Akerson Enterprises is entitled to a permanent injunction.

### III.  Attorney's Fees and Costs

Akerson Enterprises seeks to recover $42,561.80 in reasonable attorney's fees and costs. In support, Akerson Enterprises' counsel submitted a declaration detailing its requested fees and costs. ECF No. 25. The filing outlines the billing rates for individuals who worked on the case, as well as brief descriptions of the work performed.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

was litigated." *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245 (10th Cir. 2021). District courts may exercise their discretion to find a case exceptional by looking to a list of factors that includes "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014).

Here, the court exercises its discretion, finds that this case is exceptional, and awards attorney's fees and costs. Akerson Enterprises has prevailed on the facts presented, and Defendants' decision to operate a website blatantly copying Plaintiff's trademarks was objectively unreasonable. As established above, Defendants' violations of the Lanham Act could have only arisen from deliberate and willful conduct, which points to a finding of exceptionality. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). After reviewing the submitted declaration, the court holds that Akerson Enterprises is entitled to $42,561.80 in reasonable attorney's fees and costs.

## CONCLUSION

For the above reasons, the court **GRANTS** Akerson Enterprises' motion for a default judgment and permanent injunction.

The court ORDERS the following:

1. The court enters default judgment against Defendant Pushen Testing Instruments (Shanghai) Co., Ltd. and www.kindredbravly.shop, and awards $400,000 in statutory damages.

2. The court grants Akerson Enterprises' motion for a permanent injunction. The court will file the accompanying permanent injunction on the docket.

3. The court grants Akerson Enterprises' motion for attorney's fees and costs in the amount of $42,561.80.

Signed October 29, 2025.

BY THE COURT

_____
Jill N. Parrish
United States Chief District Judge